IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MELLER OPTICS, INC. d/b/a
LASER RESEARCH OPTICS,

Plaintiff,

v.

BRUCE SUNDERLAND, GARY SUNDERLAND
NIPPON AMERICA LTD. and
SUNDERLAND & ASSOCIATES

Defendants.

[redacted] 05 307S

C.A. No. _____

**MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff, Meller Optics, Inc. d/b/a Laser Research Optics moves this Honorable Court for a Temporary Restraining Order and a Preliminary Injunction.

A Verified Complaint, Memorandum in Support of this Motion and a proposed order accompany this Motion.

Respectfully submitted,

MELLER OPTICS, INC.
d/b/a LASER RESEARCH OPTICS

By its attorneys:

William R. Grimm, (1938)
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, Rhode Island 02903
Tel: (401) 274-2000
Fax: (401) 277-9600

Dated: July 11, 2005

#536683

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MELLER OPTICS, INC. d/b/a LASER RESEARCH OPTICS, | |
| Plaintiff, | |
| v. | C.A. No. _____ |
| BRUCE SUNDERLAND, GARY SUNDERLAND NIPPON AMERICA LTD. and SUNDERLAND & ASSOCIATES | |
| Defendants. | |

**TEMPORARY RESTRAINING ORDER**

This matter came to be heard before ______________ on July __, 2005 on Plaintiff Meller Optics, Inc. d/b/a Laser Research Optics motion for a temporary restraining order against Defendants Bruce Sunderland, Gary Sunderland, Nippon America Ltd. and Sunderland & Associates. After hearing and consideration it is hereby

ORDERED that Defendants Bruce Sunderland, Gary Sunderland, Nippon America Ltd. and Sunderland & Associates their officers, servants, agents, employees, attorneys and representatives, and each of them, and those parties acting in concert or participating with them, upon receipt of this order:

1. immediately remove the link from the <laserresearch.net> domain name to the website located at the Internet address <designoptics.com>;

2. immediately restore Plaintiff's website at the <laserresearch.net> domain name.

ORDERED that Defendants Bruce Sunderland, Gary Sunderland, Nippon America Ltd. and Sunderland & Associates their officers, servants, agents, employees, attorneys and representatives, and each of them, and those parties acting in concert or participating with them, are enjoined and restrained from:

(a) using, maintaining, selling, transferring, licensing, or assigning, or offering to sell, transfer, license or assign the <laserresearchoptics.com>, <laserresearchoptics.net>, <laseropticsresearch.com> and <researchlaseroptics.com> domain names or any colorable variations thereof that give rise to a likelihood of confusion, mistake or deception with respect to Plaintiff's marks, or in any way dilute the distinctiveness of the Plaintiff's marks;

(b) using the Plaintiff's LASER RESEARCH OPTICS mark, or any mark, logo, name or designation that gives rise to a likelihood of confusion, mistake or deception with respect to the Plaintiff's LASER RESEARCH OPTICS mark, or in any way dilutes the distinctiveness of Plaintiff's LASER RESEARCH OPTICS mark as a service mark, domain name, metatag or in any other form;

(c) doing any other acts likely to induce the mistaken belief that Defendants, their products, services, information, or Internet domain name is in any way affiliated, connected, or associated with Plaintiff or its products and/or services.

This matter is continued for a hearing on Plaintiff's request for a preliminary injunction until July ____, 2005.

ORDER: ENTER:

______________________________ ______________________________

#536683

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MELLER OPTICS, INC. d/b/a<br>LASER RESEARCH OPTICS,<br><br>Plaintiff,<br><br>v.<br><br>BRUCE SUNDERLAND, GARY SUNDERLAND<br>NIPPON AMERICA LTD. and<br>SUNDERLAND & ASSOCIATES<br><br>Defendants. | 05 307S<br><br>C.A. No. _____ |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## I. INTRODUCTION

Plaintiff, Meller Optics, Inc. d/b/a Laser Research Optics ("Laser Research Optics" or "Plaintiff"), has moved this Court for a Temporary Restraining Order and a Preliminary Injunction. As set forth in the Verified Complaint filed concurrently herewith, Plaintiff seeks relief from Defendants Bruce Sunderland ("Sunderland"), Nippon America Ltd. ("Nippon"), and Sunderland & Associates ("Sunderland & Associates") (collectively "Defendants") acts of federal trademark cyberpiracy pursuant to 15 U.S.C. § 1125(d), false designation of origin and unfair competition, breach of contract and conversion.

Defendants have misappropriated Plaintiff's service mark LASER RESEARCH OPTICS by willfully adopting, registering and maintaining Internet domain names incorporating Plaintiff's mark or a variation thereof namely, <laserresearchoptics.com>,

<laserresearchoptics.net>, <laseropticsresearch.com>, <researchlaseroptics.com> and <laserresearch.net> and further by unilaterally **taking down** Plaintiff's commercial website previously located at <laserresearch.net> and using such domain name to re-direct Plaintiff's current and prospective customers to <designoptics.com>, the website for Defendant Sunderland's **new competing business**.

Plaintiff respectfully submits this Memorandum of Law in support of its Motion for a Temporary Restraining Order and Preliminary Injunction.

## STATEMENT OF FACTS

### A. Plaintiff's Purchase of Laser Research Optics

Laser Research Optics is engaged in the business of fabrication, manufacture, sales and distribution of optics for industrial $CO_2$ lasers. Laser Research Optics was founded in 1992 by Defendant Bruce Sunderland and, from 1992 to 1995, operated as a division of Defendant Nippon.

On October 31, 1995, Plaintiff Meller purchased LASER RESEARCH OPTICS from Defendant Nippon. Pursuant to purchase and sales agreement, acquired from Defendant Nippon, among other things, the exclusive right to use the LASER RESEARCH OPTICS trademark and trade name and such other trademarks and trade names as were used by Nippon in connection with the LASER RESEARCH OPTICS business and all of the benefits flowing from the use of such trademarks and trade names.

Defendant Nippon also agreed to execute such documents as Plaintiff may reasonably require to transfer the ownership of the trade name LASER RESEARCH OPTICS to Plaintiff along with all rights and benefits flowing therefrom and to cooperate with Plaintiff's efforts to accomplish the same.

**B. Meller's Employment Agreement With Bruce Sunderland**

Also on October 31, 1995, Plaintiff entered into a five year employment agreement with Defendant Bruce Sunderland whereby Sunderland would sell and manage the sales of all $CO_2$ and related optics purchased by Plaintiff from Nippon and such other optical lines and endeavors as the parties shall agree are appropriate for Sunderland to manage on behalf of Plaintiff.

**C. Plaintiff's LASER RESEARCH OPTICS Trademark**

Since 1995, Plaintiff Laser Research Optics has substantially, continuously and exclusively used, in connection with its business, the mark LASER RESEARCH OPTICS. As a result of substantial, continuous and exclusive use of the mark LASER RESEARCH OPTICS, since 1995, Laser Research Optics has built up substantial value and goodwill in such mark. Such goodwill extends throughout the United States.

Since at least as early as 1995, Laser Research Optics has spent substantial dollars in advertising and promoting its $CO_2$ optic laser products offered under the LASER RESEARCH OPTICS mark. Plaintiff advertises its $CO_2$ optic products and transacts business with its customers throughout the United States through its sales representatives and through its website located at <laserresearch.net>. Plaintiff's LASER RESEARCH OPTICS trademark is prominently featured on its <laserresearch.net> website as well as on its advertising materials and business documents.

Through its efforts over the past 10 years, Laser Research Optics has established a strong customer base throughout the United States and is known throughout its trading area as a provider of quality $CO_2$ optics products. By virtue of the quality of its products

and services, and as a result of its expenditure of considerable sums of money on advertising and promotional activity, Laser Research Optics has built up valuable good will in its LASER RESEARCH OPTICS mark. The LASER RESEARCH OPTICS mark is distinctive and has come to be associated with goods and services originating from Plaintiff. The LASER RESEARCH OPTICS mark is of substantial and immeasurable value to Plaintiff.

**D. <u>Plaintiff's Use of the Internet</u>**

In order to increase its presence on the web, Laser Research Optics hired a website developer to design and implement a website in connection with its LASER RESEARCH OPTICS business at <laserresearch.net>. Since that time, Laser Research Optics has continuously operated a web site at the Internet address <laserresearch.net> and has paid all hosting fees associated with this website.

Laser Research Optics uses its <laserresearch.net> website to advertise and promote its $CO_2$ optics products. Laser Research Optics' website also allows its current and potential customers to learn about its various $CO_2$ optics products, to request information regarding purchasing such products, to request a price quote for its products and to obtain warranty information. The Internet has become an extremely important communication and marketing tool for Laser Research Optics.

**E. <u>Defendant's Unauthorized Use of Plaintiff's Mark</u>**

Unbeknownst to Laser Research Optics, on or around June 22, 1999, Defendant Nippon acquired title to and control over the <laserresearch.net> domain name. At this time, Defendant Bruce Sunderland, Vice President of Nippon was listed as the billing contact for such domain name. A copy of the Whois record for this domain name

showing Nippon as the registered owner is attached to the Verified Complaint at Exhibit A. Thereafter, Nippon transferred the domain name to Sunderland & Associates. A copy of the Whois record for this domain name showing Sunderland & Associates as the registered owner is attached to the Verified Complaint at Exhibit B.

**F. Sales Representative Agreement with Nippon**

Upon expiration of Defendant Sunderland's employment agreement in October 2000, Plaintiff and Nippon entered into a five (5) year Sales Representative Agreement. Pursuant to this Agreement Nippon would sell and manage the sales of all $CO_2$ and related optics and other optical lines developed and produced by Meller. Nippon's duties under this Sales Representative Agreement were carried out by its officers, Bruce Sunderland and Gary Sunderland.

**G. Defendants' Domain Name Registration Activities.**

On December 8, 2004, David Lydon, President of Plaintiff, received notice from one of its competitors, IIVI Optics, that the domain name <laserpoweroptics.com>, which contains IIVI's LASER POWER OPTICS trademark, was linking consumers searching for IIVI's website to Laser Research Optic's website located at <laserresearch.net>. Thereafter, Plaintiff learned that Sunderland & Associates registered the <laserpoweroptics.com> domain name on November 30, 2004.

David Lydon sent an e-mail to Defendant Bruce Sunderland, a principal of Sunderland & Associates and Vice President of Nippon, requesting that he immediately remove the link from <laserpoweroptics.com> to Laser Research Optics' <laserresearch.net> website. Lydon also requested that Sunderland transfer the domain name to its rightful owner, IIVI Optics. Sunderland removed the link to Laser Research

Optics' <laserresearch.net> website, but refused to transfer the domain name to its rightful owner.

On April 7, 2005, Sunderland & Associates registered two other domain names containing trademarks of another optical laser manufacturer namely, <iivioptics.com> and <ii-vioptics.com>. The Whois records for these domain names showing Sunderland & Associates as the registered owner are attached to the Verified Complaint at Exhibit C.

On or about June 15, 2005, Laser Research Optics learned that Defendant Sunderland & Associates had registered the <laserresearchoptics.com> domain name. A copy of the Whois record for this domain name is attached to the Verified Complaint at Exhibit D. This domain name was registered on August 30, 2000, only two months prior to the expiration of Defendant Bruce Sunderland's employment agreement with Plaintiff.

Plaintiff immediately contacted Defendant Sunderland and requested that he transfer the domain name to Meller. As Bruce Sunderland was out of the country, his brother Gary, the Secretary of Nippon and, upon information and belief, the other principal of Sunderland & Associates, responded by refusing to transfer the domain name to Meller and boasting that Sunderland & Associates owns over 30 domain names some of which include the trademarks of other optic laser manufacturers, namely LPO (Laser Power Optics), IIVI and LAMBDA.

When Defendants failed to comply with Plaintiff's further request that Defendants transfer the domain name to Plaintiff, Plaintiff terminated the Sales Representative Agreement between Plaintiff and Nippon for cause effective June 30, 2005.

In its letter terminating the Sales Representative Agreement, Laser Research Optics again requested that Defendants transfer the <laserresearchoptics.com> domain

name to Laser Research Optics and return Laser Research Optics' customer list and other proprietary information. Defendants did not transfer the domain name or return the requested customer lists but, rather, **took down** Laser Research Optics' website located at <laserresearch.net>, on July 6, 2005, presumably in retaliation for Plaintiff's termination of the Sales Representative Agreement. This was the first time Laser Research Optics learned that Defendants had obtained title to and control of its <laserresearch.net> domain name.

Upon further investigation, Laser Research Optics learned that Sunderland & Associates had registered three other domain names containing the LASER RESEARCH OPTICS trademark or a variation thereof at various times in 2005. These domain names, <laseropticsresearch.com>, <researchlaseroptics.com> and <laserresearchoptics.net> were registered on April 7, 2005, April 7, 2005 and June 16, 2005, the **very next day** after Plaintiff requested the return of its <laserresearchoptics.com> domain name, respectively. The Whois records for these domain names are attached to the Verified Complaint at Exhibit E.

On or about July 7, 2005, Defendant began pointing the <laserresearch.net> domain name to <designoptics.com>, the website for Defendant Bruce Sunderland's **new competing business**.

Defendant has used and continues to use the <laserresearch.net> domain name to redirect Plaintiff's current and prospective customers to its competing website. Specifically, when the domain name <laserresearch.net> is entered into any commercial Internet browser, it redirects customers to Defendant Sunderland's website which advertises and sells the same $CO_2$ optics products as sold by Plaintiff. A print out of

Defendant Sunderland's web site located at <designoptics.com> is attached to the Verified Complaint at Exhibit F. It is at least reasonable to assume that Defendants have the same plans for the <laserresearchoptics.com>, <laserresearchoptics.net>, <laseropticsresearch.com> and <researchlaseroptics.com> domain names.

Defendants' use of the domain name <laserresearch.net> is a blatant attempt to interrupt Plaintiff's business and lure Plaintiff's unsuspecting current and potential customers to Defendant Sunderland's website for his **new competing business**.

Defendants' activities, as described above, are willful and intentional and intended to trade on the reputation and good will of Plaintiff and to confuse and deceive consumers for the purpose of giving Defendant an opportunity which it would not otherwise have.

**H. The Effect Of Defendant's Acts**

The natural, probable and foreseeable result of Defendants' wrongful conduct is and will be to continue to injure Plaintiff's good will, reputation and relations with its present and prospective customers.

Upon information and belief, Plaintiff has sustained and will continue to sustain damage as a result of Defendants' unauthorized registration of the <laserresearch.net>, <laserresearchoptics.com>, <laserresearchoptics.net>, <laseropticsresearch.com> and <researchlaseroptics.com> domain names, Defendants' taking down of Plaintiff's commercial website located at <laserresearch.net>, and Defendants' redirection of Plaintiff's current and prospective customers to the website for Defendant Bruce Sunderland's new competing company.

Plaintiff is harmed every second Plaintiff's website is down. Every time a consumer attempts to reach Plaintiff by entering the <laserresearch.net> domain name, which Plaintiff has used to communicate with its customers and transact business for over six years, and is re-directed to Defendant Sunderland's competing web site, Plaintiff is irreparably harmed. For instance, a consumer searching for Plaintiff's website who is re-directed to Defendant Sunderland's web site may fail to continue to search for Plaintiff's web site due to anger, frustration or the belief that Plaintiff's web site no longer exists. On the other hand, current or prospective customers which are re-directed to Defendant Sunderland's competing website may believe that they have found Plaintiff's web site and submit information or questions expecting a response from Plaintiff, which inquiries Plaintiff will never receive and never respond to or, worse, purchase inferior products.

Plaintiff believes that unless immediately enjoined by this Court, Defendants intend to continue to wrongfully use, infringe upon and otherwise profit from Plaintiff's LASER RESEARCH OPTICS mark and the unlawfully obtained <laserresearch.net>, <laserresearchoptics.com>, <laserresearchoptics.net>, <laseropticsresearch.com> and <researchlaseroptics.com> domain names.

Every time an innocent and unsuspecting consumer visits Defendant Sunderland's web site on the mistaken belief that it has reached Plaintiff's website, Plaintiff's good will, reputation and relationship with its present and prospective customers sustains further damage. As a result, Plaintiff has already suffered irreparable damage to its good will, reputation and relations with present and prospective customers.

Plaintiff has no adequate remedy at law to redress all of the injuries that Defendants have caused and intend to cause by their conduct. Plaintiff will continue to

suffer irreparable damage until Defendants' actions alleged above are enjoined by this Court.

## ARGUMENT

### I. PLAINTIFF IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, RESTRAINING AND ENJOINING DEFENDANTS' UNAUTHORIZED USE OF PLAINTIFF'S LASER RESEARCH OPTICS MARK AND DOMAIN NAMES

It is well settled in this Circuit that the court must consider four factors in determining whether to issue a temporary restraining order and preliminary injunction: (1) whether there is a reasonable likelihood of success on the merits; (2) whether there will be irreparable injury if the injunction is not granted; (3) whether such injury outweighs any harm which granting injunctive relief would inflict on the defendants; and (4) whether the public interest would be adversely affected by the granting of the injunction. Coolbeth v. Berberian, 313 A.2d 656, 660 (R.I. 1974); see also Collazo Rivera v. Torres Gaztambide, 812 F.2d 258, 259 (1st Cir. 1987); Leone v. Town of New Shoreham, 534 A.2d 871, 873 (R.I. 1987). In evaluating Plaintiff's likelihood of success on the merits, the court's inquiry is limited to whether Plaintiff has shown a "reasonable probability, rather than a certainty, of ultimate success on a final hearing." Coolbeth v. Berberian, 313 A.2d at 660.

As demonstrated below, applying these standards, Plaintiff is entitled to preliminary injunctive relief.

#### B. Plaintiff Has A Reasonable Likelihood Of Succeeding On The Merits Of Its Trademark Cyberpiracy Claim

In order to succeed on a claim under the Anticybersquatting Consumer Protection Act ("ACPA"), plaintiff must prove that: (1) the plaintiff is the owner of a mark registered as a domain name by the alleged cybersquatter; (2) plaintiff's mark is distinctive or famous; (3) defendant's domain name is identical or confusingly similar to plaintiff's mark; and (4) defendant registered the domain name with a bad faith intent to profit from plaintiff's mark. 15 U.S.C. § 1125(d); Shields v. Zuccarini, 89 F. Supp.2d 634, 638 (E.D. Pa. 2000); Northern Light Technology, Inc. v. Northern Lights Club, No. CIV. A. 99-11664-DPW, 2000 WL 525553 *18 (D. Mass. March 21, 2000); Spear, Leeds & Kellogg v. Rosado, No. 99 Civ. 11417-JSR, 2000 WL 310355 * 3 (S.D.N.Y. March 27, 2000).

**1. Plaintiff Owns The Service Mark LASER RESEARCH OPTICS**

Plaintiff acquired the LASER RESEARCH OPTICS trademark and trade name from Defendant Nippon in 1995. Since this time, Plaintiff has continuously used the Laser Research Optics name and mark in connection with its $CO_2$ laser business. In addition, Plaintiff purchased and has used the <laserresearch.net> domain name in connection with its commercial website for over six years.

**2. Plaintiff's LASER RESEARCH OPTICS Mark is Distinctive and Entitled to Protection**

In order to obtain protection under the ACPA, plaintiff's mark must be distinctive. 15 U.S.C. § 1125(d)(1)(A)(ii). To determine whether a mark is distinctive under the ACPA, the court should apply the criteria set forth in 15 U.S.C. § 1125(c)(1). Sporty's Farm LLC v. Sportsman's Market, Inc., 202 F.3d 489, 497 (2d Cir. 2000) (applying 15 U.S.C. § 1125(c)(1) to determine whether a mark is famous or distinctive

under the ACPA). Under 15 U.S.C. § 1125(c)(1), a court may consider factors including, but not limited to: (1) the degree of inherent or acquired distinctiveness of the mark; (2) the duration and extent of use of the mark in connection with the goods or services with which the mark is used; (3) the duration and extent of advertising and publicity of the mark; (4) the geographical extent of the trading area in which the mark is used; (5) the channels of trade for the goods or services with which the mark is used; (6) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought; (7) the nature and extent of use of the same or similar marks by third parties; and (8) whether the mark was registered on the principal register. See 15 U.S.C. § 1125(c)(1)(A – H).

Plaintiff's LASER RESEARCH OPTICS mark is distinctive within the meaning of 15 U.S.C. § 1125(c)(1). The LASER RESEARCH OPTICS mark has been used by Plaintiff in connection with its business and the sale of $CO_2$ optic laser products continuously since 1995. Over the past ten years, Plaintiff has expended considerable dollars in advertising and promoting its laser optics products offered under the LASER RESEARCH OPTICS mark. Plaintiff's LASER RESEARCH OPTICS trademark has been prominently displayed on all documents associated with its business including business cards, letter heard, purchase orders and on its website where customers can request and obtain information about Plaintiff and its products. Based on the foregoing, Plaintiff's Laser Research Optics trademark has come to be associated with products originating with Plaintiff.

### 3. Defendant's Domain Names Are Identical or Confusingly Similar to Plaintiff's LASER RESEARCH OPTICS Service Mark

Defendant's domain names <laserresearchoptics.com>, <laserresearchoptics.net>, <<laseropticsresearch.com>, <researchlaseroptics.com> and <laserresearch.net> are confusingly similar to Plaintiff's LASER RESEARCH OPTICS mark. In determining whether Defendant's domain name is confusingly similar to Plaintiff's mark under the ACPA, the court should compare Defendant's domain name to Plaintiff's mark. Northern Light Tech., Inc. v. N. Lights Club, 97 F.Supp.2d 96, 118 (D. Mass. 2000) aff'd 236 F.3d 57 (1st Cir.), cert. denied, 533 U.S. 911, 121 S.Ct. 2263, 150 L.Ed. 2d 247 (2001).

The only difference between Defendants <laserresearchoptics.com> and <laserresearchoptics.net> domain names and Plaintiff's LASER RESEARCH OPTICS mark is the addition of the generic top level domains ".com" and ".net." The ".com" and ".net" designations in the context of an Internet domain name merely signifies the domain in which the name is registered and are necessarily at the end of every domain name. The addition of ".com" and ".net" to Plaintiff's mark is inconsequential and does nothing to distinguish the domain names from Plaintiff's LASER RESEARCH OPTICS marks.

Moreover, Defendants' <laseropticsresearch.com> and <researchlaseroptics.com> domain names merely transpose one term in Plaintiff's LASER RESEARCH OPTICS trademark.

Finally, the <laserresearch.net> domain name is the identical domain name that Plaintiff has used as the Internet address for over six years.

For all practical intents and purposes, Defendants <laserresearchoptics.com>, <laserresearchoptics.net>, <laseropticsresearch.com> <researchlaseroptics.com>, and

<laserresearch.net> domain names are virtually identical to Plaintiff's LASER RESEARCH OPTICS trademark.

**4. Defendant Registered the <laserresearchoptics.com>, <laserresearchoptics.net>, <laseropticsresearch.com> <researchlaseroptics.com>, and <laserresearch.net> Domain Names With A Bad Faith Intent To Profit From Plaintiff's Mark**

The ACPA lists nine factors to assist courts in determining when a defendant has acted with a bad faith intent to profit from the use of a mark. Sportys Farm LLC vs. Sportsman Market, Inc., 202 F.3d 489, 498 (2d Cir. 2000). These factors are: (1) the trademark or other intellectual property rights of the domain name registrant, if any, in the domain name; (2) the extent to which the domain name consists of the legal name of the domain name registrant or a name that is otherwise commonly used to identify that registrant; (3) the domain name registrant's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (4) the domain name registrant's bona fide non-commercial or fair use of the mark in a site accessible under the domain name; (5) the domain name registrant's intent to divert consumers from the mark owner's on-line location to a site accessible under the domain name that could harm the good will represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; (6) the domain name registrant's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the domain name registrant's prior conduct indicating a pattern of such conduct; (7) the domain name registrant's provision of materially misleading false contact information when applying for the registration of

the domain name, the domain name registrant's intentional failure to maintain accurate contact information, or the domain name registrant's prior conduct indicating a pattern of such conduct; (8) the domain name registrant's registration or acquisition of multiple domain names which the registrant knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and (9) the extent to which the mark incorporated in the domain name registrant's domain name registration is or is not distinctive and famous within the meaning of 15 U.S.C. § 1125(c)(1). See 15 U.S.C. § 1125(d)(1)(B)(i).

Defendant registered the <laserresearchoptics.com>, <laserresearchoptics.net>, <laseropticsresearch.com> <researchlaseroptics.com>, and <laserresearch.net> domain names in bad faith. It is clear that neither Sunderland, Sutheherland & Associates nor Nippon America have any intellectual property rights in <laserresearchoptics.com>, <laserresearchoptics.net>, <laseropticsresearch.com> <researchlaseroptics.com>, and <laserresearch.net> now or at the time Defendant registered the domain names.

The domain names <laserresearchoptics.com>, <laserresearchoptics.net>, <laseropticsresearch.com> <researchlaseroptics.com>, and <laserresearch.net> do not consist of the legal name of Sunderland, Sunderland & Associates or Nippon nor are they names that they are commonly identified by. In fact, Defendants relinquished and transferred all rights in the LASER RESEARCH OPTICS trademark and trade name and any other trademark or trade name used in connection with the LASER RESEARCH OPTICS business to Plaintiff in 1995.

Defendants has not made a bona fide non-commercial or fair use of Plaintiff's LASER RESEARCH OPTICS mark in a site accessible under the <laserresearchoptics.com>, <laserresearchoptics.net>, <laseropticsresearch.com> <researchlaseroptics.com>, and <laserresearch.net> domain names. Rather, Defendants have registered the <laserresearchoptics.com>, <laserresearchoptics.net>, <laseropticsresearch.com> <researchlaseroptics.com>, and <laserresearch.net> domain name comprising Plaintiff's mark in order to re-direct Plaintiff's current and prospective customers to Defendant Sunderland's <designoptics.com> website where he advertises his own **competing** $CO_2$ optic laser products. Specifically, when the domain name <laserresearch.net>, the domain name that Plaintiff operated under for over six years, is entered into any commercial Internet browser, it points to Defendant Sunderland's competing website. It is at least reasonable to presume that Defendants have the same plans for the other infringing domain names.

Such conduct of Defendant is likely to tarnish and disparage Plaintiff's mark and harm the goodwill represented by Plaintiff's mark because Plaintiff has no control over the content of Defendant's website or the quality of the goods and services offered at such website. Any inferior product or service offered by Defendant at such website will reflect adversely upon Plaintiff and further tarnish Plaintiff's LASER RESEARCH OPTICS mark.

Defendant's bad faith is bolstered by the fact that Defendant Sunderland & Associates, presumably under the control of Defendant Sunderland, has registered at least three domain names of other manufactures of $CO_2$ optic laser products. Specifically,

Defendant has registered the valuable service marks of other manufactures such as <laserpoweroptics.com>, <iivioptics> and <ii-vilasweroptics.com>.

Defendant Sunderland has admitted to registering the domain name <laserpoweroptics.com> and pointing it to Plaintiff's <laserresearch.net> website while he was a sales representative of Plaintiff thereby making Plaintiff susceptible to an action for cyberpiracy itself. When confronted by Plaintiff and asked to immediately remove the link and return the domain name to its rightful owner, Sunderland removed the link but refused to return the domain name. Today, the <laserpowerresearch.com> domain name is still owned by Defendant Sunderland and is now pointing its his new competing website located at <designoptics.com>.

Such pattern of conduct is evidence of bad faith registration under the ACPA. Northern Light Tech., Inc. v. N. Lights Club, 97 F.Supp.2d at 118 (finding bad faith intent where defendant had made practice of registering domain names containing the trademarks or names of others); Spear, Leeds & Kellogg v. Rosado, 122 F.Supp.2d 403, 406 (S.D.N.Y. 2000) (finding bad faith intent where defendant registered numerous domain names that include marks that belong to third parties).

Based on the foregoing, it is clear that Plaintiff owns the mark LASER RESEARCH OPTICS, that Plaintiff's mark is distinctive, that Defendants' <laserresearchoptics.com>, <laserresearchoptics.net>, <laseropticsresearch.com> <researchlaseroptics.com>, and <laserresearch.net> domain names are confusingly similar to Plaintiff's LASER RESEARCH OPTICS mark and that Defendants have registered the <laserresearchoptics.com>, <laserresearchoptics.net>, <laseropticsresearch.com> <researchlaseroptics.com>, and <laserresearch.net> domain names with the bad faith

intent to profit from Plaintiff's mark and to divert consumers from Plaintiff's website to Sunderland's competing website. Thus, Plaintiff has established a reasonable likelihood of success on the merits of its trademark cyberpiracy claim.

**E. Plaintiff Has Suffered And Will Suffer Irreparable Injury If The Injunction Relief Sought Is Not Granted**

Every time Plaintiff's current and prospective customers are re-directed to Defendant Sunderland's new website, Plaintiff is irreparably harmed. Such diversion may well cost Plaintiff significant business opportunities. Finally, Plaintiff has no control over the content of Defendant Sunderland's <designoptics.com> web site or the quality of goods or services Defendants offers at such site. Any inferior products or inappropriate content will reflect adversely upon Plaintiff.

Money damages cannot compensate Plaintiff for its injuries because the injuries involve incalculable harm to Plaintiff's goodwill, reputation and relationship with present and prospective customers. Based on the foregoing, this factor also favors the issuance of a temporary restraining order and a preliminary injunction.

**F. The Balance of Hardships Weighs In Favor of Plaintiff**

Defendants cannot complain that they will suffer irreparable injury if a Temporary Restraining Order and Preliminary Injunction is issued because they misappropriated Plaintiff's LASER RESEARCH OPTICS mark and domain name with full knowledge of the rights of Plaintiff. Opticians Association of America v. Independent Opticians of America, 17 U.S.P.Q. 2d 1117 (3d Cir. 1990) ("By virtue of its recalcitrant behavior [a party] can hardly claim to be harmed, since it brought any and all difficulties occasioned by the issuance of an injunction upon itself."). Even if Defendants complain that they would be harmed if Plaintiff's requested injunctive relief is granted,

any harm Defendants could conceivably sustain is far outweighed by the harm to Plaintiff if Plaintiff's requested relief is denied.

First, it appears that Defendants are receiving no advantage by maintaining the offending domain names other than illegally re-directing Plaintiff's current and prospective customers to its competing website. Second, Defendants have not expended a considerable amount of time or money maintaining an Internet website at <laserresearch.net> because such domain name merely links to <designoptics.com>, Defendant Sunderland's competing website. Conversely, Plaintiff has suffered and will continue to suffer irreparable harm to its good will, reputation and relations with present and prospective consumers if Defendants are permitted to continue to re-direct Plaintiff's current and prospective customers to Defendant Sunderland's competing website. Based on the foregoing, this factor also favors the issuance of a temporary restraining order and a preliminary injunction.

**H. <u>The Public Interest</u>**

There is no question that Defendants' ultimate goal is to confuse and deceive Plaintiff's current and prospective consumers and to have them believe that Plaintiff's website no longer exists or that Plaintiff is somehow related with Defendant Sunderland's new endeavor. The public will undoubtedly be harmed if Defendants are permitted to continue to deceive and confuse the public as to the origin and sponsorship of Sunderland's <designoptics.com> website by and redirecting Plaintiff's customers looking for Plaintiff to such website. The issuance of an injunction will protect the public from the deceptive and confusing use of Plaintiff's <laserresearch.net> domain name.

Based on the foregoing, this factor also favors the issuance of a temporary restraining order and a preliminary injunction.

## V. <u>CONCLUSION</u>

For the reasons discussed above and as set forth in the Verified Complaint, this Court should grant Plaintiff's Motion for Temporary Restraining Order requiring Defendants to: (1) immediately disable the link from the <laserresearch.net> domain name to the website located at <designoptics.com>; (2) immediately restore Plaintiff's website at the <laserresearch.net> domain name; (3) restraining Defendants, their agents, servants, employees, attorneys, and all other persons in active concert, privity or participation with them pending the final hearing and determination of this action, from: (a) using, maintaining, selling, transferring, licensing, or assigning, or offering to sell, transfer, license or assign the <laserresearchoptics.com>, <laserresearchoptics.net>, <laseropticsresearch.com>, and <researchlaseroptics.com> domain names or any colorable variations thereof that give rise to a likelihood of confusion, mistake or deception with respect to Plaintiff's marks; (b) using the Plaintiff's LASER RESEARCH OPTICS mark, or any mark, logo, name or designation that gives rise to a likelihood of confusion, mistake or deception with respect to the Plaintiff's LASER RESEARCH OPTICS mark, as a service mark, domain name, metatag or in any other form; and (c) doing any other acts likely to induce the mistaken belief that Defendants', their products, services, information or Internet domain name is in any way affiliated, connected, or associated with Plaintiff or its products or services.

Respectfully submitted,

MELLER OPTICS, INC. d/b/a LASER RESEARCH OPTICS

By its attorneys:

William R. Grimm, (1938)
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, Rhode Island 02903
Tel: (401) 274-2000
Fax: (401) 277-9600

Dated: July 11, 2005