IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MELLER OPTICS, INC. d/b/a<br>LASER RESEARCH OPTICS,<br><br>Plaintiff,<br><br>v.<br><br>BRUCE SUNDERLAND, GARY SUNDERLAND<br>NIPPON AMERICA LTD.,<br>SUNDERLAND & ASSOCIATES, AND<br>DESIGN RESEARCH OPTICS,<br><br>Defendants. | C.A. No. 05-307-S |

**VERIFIED AMENDED COMPLAINT FOR FEDERAL TRADEMARK CYBERPIRACY, UNFAIR COMPETITION, BREACH OF CONTRACT, CONVERSION AND MISAPPROPRIATION OF TRADE SECRETS**

Plaintiff Meller Optics, Inc. ("Plaintiff" or "Laser Research Optics") brings this action against Defendants Bruce Sunderland ("Bruce Sunderland"), Gary Sunderland ("Gary Sunderland"), Nippon America Ltd. ("Nippon"), Sunderland & Associates ("Sunderland & Associates") and Design Research Optics ("Design Research Optics") (collectively "Defendants") and alleges as follows:

## NATURE OF ACTION

1. This is an action by Plaintiff Laser Research Optics against Defendants for federal trademark cyberpiracy pursuant to 15 U.S.C. § 1125(d); unfair competition and false designation of origin, breach of contract, conversion, and misappropriation of trade secrets. Defendants have misappropriated Plaintiff's service mark LASER RESEARCH OPTICS by willfully adopting, registering and maintaining Internet domain names

incorporating Plaintiff's mark LASER RESEARCH OPTICS namely, <laserresearchoptics.com>, <laserresearchoptics.net>, <laseropticsresearch.com> and <researchlaseroptics.com>. Further, Defendant Nippon and Sunderland & Associates have unlawfully obtained access to and control over Plaintiff's <laserresearch.net> domain name, taken down Plaintiff's website which resided at such Internet address and is now using the <laserresearch.net> domain name to deceptively direct Plaintiff's current and prospective customers to <designoptics> the website for Defendant Bruce Sunderland's new competing business, Design Research Optics. Defendants have also misappropriated Plaintiff's trade secrets and other confidential business information and have used such information in connection with Defendant Bruce Sunderland's new competing business, Design Research Optics.

**PARTIES**

2. Plaintiff Meller Optics, Inc. d/b/a Laser Research Optics is a corporation duly organized and existing under the laws of the State of Rhode Island, having its principal place of business at 120 Corliss Street, Providence, Rhode Island.

3. Upon information and belief, Nippon America Ltd. is a corporation duly organized and existing under the law of the State of Vermont, having a place of business at 95 Adirondack Drive, East Greenwich, Rhode Island.

4. Upon information and belief, Sunderland & Associates is an unincorporated partnership comprising brothers Gary Sunderland and Bruce Sunderland having a place of business at 7 Sleepy Hollow Rd., East Greenwich, Rhode Island.

5. Upon information and belief, Bruce Sunderland is an individual who resides at 95 Adirondack Drive, East Greenwich, Rhode Island.

6. Bruce Sunderland is the Vice President and Treasurer of Nippon America Ltd. and upon information and belief a principal of Sunderland & Associates.

7. Upon information and belief, Gary Sunderland is an individual who resides at 7 Sleepy Hollow Rd., East Greenwich, Rhode Island.

8. Gary Sunderland is the Secretary of Nippon America Ltd. and, upon information and belief, a principal of Sunderland & Associates.

9. Upon information and belief, Design Research Optics is an unincorporated partnership comprising Defendants Bruce Sunderland and Gary Sunderland, having a place of business at 95 Adirondack Drive, East Greenwich, Rhode Island.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338 and 1376(a) and 15 U.S.C. §§ 1116 and 1121.

11. This Court has personal jurisdiction over Defendants because Defendants have committed tortious acts within this judicial district and because Defendants reside in this judicial district.

12. Venue is proper pursuant to 15 U.S.C. § § 1391(b)(2) because a substantial part of the events giving rise to the claims herein occurred in this judicial district.

## GENERAL ALLEGATIONS

### A. Plaintiff's Purchase of Laser Research Optics

13. Laser Research Optics is engaged in the business of fabrication, manufacture, sales and distribution of optics for industrial $CO_2$ lasers.

14. Laser Research Optics was founded in 1992 by Defendant Bruce Sunderland and from 1992 to 1995 operated as a division of Defendant Nippon.

15. On October 31, 1995, Plaintiff purchased LASER RESEARCH OPTICS from Defendant Nippon.

16. Pursuant to the purchase and sales agreement, Plaintiff acquired from Defendant Nippon, among other things, the exclusive right to use the LASER RESEARCH OPTICS trademark and trade name and such other trade names and trade marks as were used by Nippon in connection with the LASER RESEARCH OPTICS business and all of the benefits flowing from the use of such trade names and trademarks.

17. Defendant Nippon also agreed to execute such documents as Plaintiff may reasonably require to transfer the ownership of the trade name LASER RESEARCH OPTICS to Plaintiff along with all rights and benefits flowing therefrom and to cooperate with Meller's efforts to accomplish the same.

**B. <u>Plaintiff's Employment Agreement With Bruce Sunderland</u>**

18. Also on October 31, 1995, Meller entered into a five year employment agreement with Defendant Bruce Sunderland whereby Bruce Sunderland would sell and manage the sales of all $CO_2$ and related optics purchased by Plaintiff from Nippon and such other optical lines and endeavors as the parties shall agree are appropriate for Sunderland to manage on behalf of Plaintiff.

**C. <u>Plaintiff's LASER RESEARCH OPTICS Trademark</u>**

19. Since 1995, Plaintiff has substantially, continuously and exclusively used, in connection with its business, the mark LASER RESEARCH OPTICS.

20. As a result of substantial, continuous and exclusive use of the mark LASER RESEARCH OPTICS, since 1995, Plaintiff has built up substantial value and goodwill in such mark. Such goodwill extends throughout the United States, including Rhode Island.

21. Since at least as early as 1995, Plaintiff has spent substantial amounts in advertising and promoting its $CO_2$ laser products offered under the LASER RESEARCH OPTICS mark. Plaintiff advertises its $CO_2$ optic products and transacts business with its customers throughout the United States through its sales representatives and through its website located at <laserresearch.net>. Plaintiff's LASER RESEARCH OPTICS trademark is prominently featured on its website as well as on its marketing materials and business documents.

22. Through its efforts over the past 10 years, Plaintiff has established a strong customer base throughout the United States and is known throughout its trading area as a provider of quality $CO_2$ optics products. By virtue of the quality of its products and services, and as a result of its expenditure of considerable sums of money on advertising and promotional activity, Plaintiff has built up valuable good will in its LASER RESEARCH OPTICS mark. The LASER RESEARCH OPTICS mark is distinctive and has come to be associated with goods and services originating from Plaintiff. The LASER RESEARCH OPTICS trademark is of substantial and immeasurable value to Plaintiff.

**D. Plaintiff's Use of the Internet**

23. In order to increase its presence on the web, Plaintiff hired a website developer to design and implement a website in connection with its LASER RESEARCH OPTICS business.

24. Since this time, Plaintiff has continuously operated a web site at the address <laserresearch.net> and has paid all hosting fees associated with this website.

25. Plaintiff uses its <laserresearch.net> website to advertise and promote its $CO_2$ optics products. Plaintiff's website also allows its current and potential customers to learn about its various $CO_2$ optics products, to request information regarding purchasing such products, to request price quotes and to obtain warranty information.

26. The Internet has become an extremely important communication and marketing tool for Plaintiff.

**E. Defendant's Unauthorized Use of Plaintiff's Mark**

27. Unbeknownst to Plaintiff, in or around June 22, 1999, Defendant Nippon, acquired title to and control over the <laserresearch.net> domain name.

28. At this time Defendant Bruce Sunderland, Vice President of Nippon was listed as the billing contact for such domain name. A copy of the Whois record for this domain name showing Nippon as the owner is attached at Exhibit A.

29. Thereafter, Nippon transferred the domain name to Sunderland & Associates. A copy of the Whois record for this domain name showing Sunderland & Associates as the owner is attached at Exhibit B.

## F. Sales Representative Agreement with Nippon

30. Upon expiration of Defendant Bruce Sunderland's employment agreement in October 2000, Plaintiff and Nippon entered into a five (5) year Sales Representative Agreement.

31. Pursuant to this Agreement Nippon would sell and manage the sales of all $CO_2$ and related optics and other optical lines developed and produced by Plaintiff.

32. Nippon's duties under this Sales Representative Agreement were carried out by its officers, Bruce Sunderland and Gary Sunderland.

33. Pursuant to paragraph 5 of Plaintiff's Sales Representative Agreement with Nippon, Nippon agreed as follows:

> Trade Secrets. Representative agrees, that absent Employer's express consent and except while conducting the Employer's business, he shall not disclose to any person or entity any proprietary information regarding Employer relative to its business, customer, products, prices, other employees or manner of doing business. In the event of a breach of this provision, Employer shall be entitled, without barring any other remedies, to injunctive relief prohibiting Representative from disclosing such information. This provision shall survive any termination of this Agreement. This provision shall not be construed to apply to proprietary trade information relating to the business conducted by Laser Research Optics after Representative is no longer under contract with the Employer.

A copy of this agreement is attached at Exhibit C.

## G. Defendants' Domain Name Registration Activities.

34. On December 8, 2004, David Lydon, President of Plaintiff Meller received notice from one of its competitors, IIVI Optics, that the domain name <laserpoweroptics.com>, which contains IIVI's LASER POWER OPTICS trademark,

was linking consumers searching for IIVI's website to Laser Research Optic's website located at <laserresearch.net>. Thereafter, Plaintiff learned that Sunderland & Associates registered the <laserpoweroptics.com> domain name on November 30, 2004.

35. David Lydon sent an e-mail to Defendant Bruce Sunderland, a principal of Sunderland & Associates and Vice President of Nippon, requesting that he immediately remove the link from <laserpoweroptics.com> to Plaintiff's <laserresearch.net> website. Lydon also requested that Sunderland transfer the domain name to its rightful owner, IIVI Optics.

36. Sunderland removed the link to Plaintiff's <laserresearch.net> website but refused to transfer the domain name to its rightful owner.

37. On April 7, 2005, Sunderland & Associates registered two other domain names containing direct competitors' trademarks namely, <iivioptics.com> and <ii-vioptics.com>. The Whois record for these domain names are attached hereto at Exhibit D.

38. On or about June 15, 2005, Laser Research Optics learned that Defendant Sunderland & Associates had registered the <laserresearchoptics.com> domain name. A copy of the Whois record for this domain name is attached hereto at Exhibit E. This domain name was registered by Sunderland & Associates on August 30, 2000, two months prior to the expiration of Defendant Bruce Sunderland's employment agreement with Plaintiff.

39. Plaintiff immediately contacted Defendant Sunderland and requested that he transfer the domain name to Meller. As Bruce Sunderland was out of the country, his brother Gary, the Secretary of Nippon and upon information and belief, the other

principal of Sunderland & Associates, responded by refusing to transfer the domain name to Meller and boasting that Sunderland & Associates owns over 30 domain names some of which include the trademarks of other optic laser manufacturers, namely LPO (Laser Power Optics), IIVI and LAMBDA.

40. When Defendants failed to comply with Plaintiff's further request that Defendants transfer the domain name to Plaintiff, Plaintiff terminated the Sales Representative Agreement between Plaintiff and Nippon for cause effective June 30, 2005.

41. In its letter terminating the Sales Representative Agreement, Plaintiff again requested that Defendants transfer the <laserresearchoptics.com>, domain names to Plaintiff and return Plaintiff's customer list and other proprietary information.

42. Defendants did not transfer the domain name or return the requested customer lists but rather took down Plaintiff's website on July 6, 2005, presumably in retaliation for Meller's termination of the Sales Representative Agreement. This was the first time Plaintiff learned that Defendants had obtained title to and control over its <laserresearch.net> domain name.

43. Upon further investigation, Laser Research Optics learned that Sunderland & Associates had registered three other domain names containing the LASER RESEARCH OPTICS trademark or a variation thereof at various times in 2005. These domain names, <laseropticsresearch.com>, <researchlaseroptics.com> and <laserresearchoptics.net>, were registered on April 7, 2005, April 7, 2005 and June 16, 2005, **very next day** after Plaintiff requested the return of its <laserresearchoptics.com>

domain name, respectively. The Whois records for these domain names are attached at Exhibit F.

44. On or about July 7, 2005, Defendant began pointing the <laserresearch.net> domain name to <designoptics.com>, the website for Defendant Bruce Sunderland's new competing business, Design Research Optics.

45. Defendant has used and continues to use the domain name <laserresearch.net> to redirect Plaintiff's current and prospective customers to its competing website. Specifically, when the domain name <laserresearch.net> is entered into any commercial Internet browser, it redirects customers to Defendant Bruce Sunderland's website which advertises and sells the same $CO_2$ optics products as sold by Plaintiff. A print out of Defendant's web site located at <designoptics.com> is attached at Exhibit G.

46. Defendant's use of the domain name <laserresearch.net> is a blatant attempt to interrupt Plaintiff's business and lure Plaintiff's unsuspecting current and potential customers to Defendant Bruce Sunderland's website for his new competing business.

47. Defendants' activities, as described above, are willful and intentional and intended to trade on the reputation and good will of Plaintiff and to confuse and deceive consumers for the purpose of giving Defendants an opportunity which they would not otherwise have.

## H. Defendants' Use of Plaintiff's Trade Secrets and Confidential Information

48. During Defendants' five year business relationship with Plaintiff, Defendants obtained and had access to Plaintiff's trade secrets and other confidential

information, including Plaintiff's customer lists and customer contact information such as contact and billing addresses, telephone numbers, e-mail addresses and facsimile numbers, and customer correspondence. Defendants also obtained and had access to information regarding Plaintiff's pricing structure for its $CO_2$ optics products and other related optic products, Plaintiff's product sales history information, and purchaser history information.

49. Defendants have used Plaintiff's trade secrets namely, its customer list and confidential customer information, to send correspondence to over 1000 of Plaintiff's current and former customers announcing the formation of Defendants' new, competing business, Design Research Optics, by electronic mail, facsimile or otherwise.

50. Upon information and belief, Defendants have also used Plaintiff's trade secrets and other confidential information to provide price quotes for Defendants' competing $CO_2$ laser products to customers of Defendant Design Research Optics and to fulfill any new orders for such products that Defendants received after the Sales Representative Agreement was terminated on June 30, 2005.

**H. <u>The Effect Of Defendant's Acts</u>**

51. The natural, probable and foreseeable result of Defendants' wrongful conduct is and will be to continue to injure Plaintiff's good will, reputation and relations with its present and prospective customers.

52. Upon information and belief, Plaintiff has sustained and will continue to sustain damage as a result of Defendants' unauthorized registration of the <laserresearch.net>, <laserresearchoptics.com>, <laserresearchoptics.net>, laseropticsresearch.com> and <researchlaseroptics.com> domain names, Defendants'

taking down of Plaintiff's commercial website located at <laserresearch.net>, Defendants' redirection of Plaintiff's current and prospective customers to the website for Defendant Bruce Sunderland's new competing company, Design Research Optics, and Defendants' unauthorized use of Plaintiff's trade secrets and other confidential information.

53. Plaintiff is harmed every second Plaintiff's website is down. Every time a consumer attempts to reach Plaintiff by entering the <laserresearch.net> domain name, which Plaintiff has used to communicate with its customers and transact business for over six years, and is re-directed to Defendant Sunderland's competing web site, Plaintiff is irreparably harmed. For instance, a consumer searching for Plaintiff's website who is re-directed to Defendant Sunderland's web site may fail to continue to search for Plaintiff's web site due to anger, frustration or the belief that Plaintiff's web site no longer exists. On the other hand, current or prospective customers which are re-directed to Defendant Sunderland's competing website may believe that they have found Plaintiff's web site and submit information or questions expecting a response from Plaintiff, which inquiries Plaintiff will never receive and never respond to or, worse, purchase inferior products.

54. Plaintiff believes that unless immediately enjoined by this Court, Defendants intend to continue to wrongfully use, infringe upon and otherwise profit from Plaintiff's LASER RESEARCH OPTICS mark and the unlawfully obtained <laserresearch.net>, <laserresearchoptics.com>, <laserresearchoptics.net>, <laseropticsresearch.com> and <researchlaseroptics.com> domain names.

55. Every time an innocent and unsuspecting consumer visits Defendant Sunderland's web site on the mistaken belief that it has reached Plaintiff's website,

Plaintiff's good will, reputation and relationship with its present and prospective customers sustains further damage. As a result, Plaintiff has already suffered irreparable damage to its good will, reputation and relations with present and prospective customers.

56. Moreover, unless and until enjoined by this Court, Defendants intend to continue to wrongfully use Plaintiff's unlawfully obtained trade secrets and other confidential and proprietary information which will continue to irreparably injure Plaintiff in the following ways: (a) Defendants will continue to misappropriate and disclose for their own use, and perhaps to other parties, Plaintiff's confidential business information; (b) Defendants will continue to use Plaintiff's trade secrets including its customer lists, customer contact information, pricing information, and customer sales history information for their advantage, to the disadvantage of Plaintiff; and (c) Plaintiff will be in jeopardy of losing its strategic advantage over its competitors, and will continue to suffer incalculable losses of revenue and goodwill as a result of Defendants' unlawful actions.

57. Plaintiff has no adequate remedy at law to redress all of the injuries that Defendants have caused and intend to cause by their conduct. Plaintiff will continue to suffer irreparable damage until Defendants' actions alleged above are enjoined by this Court.

## COUNT I - AGAINST SUNDERLAND & ASSOCIATES
## (Federal Trademark Cyberpiracy)

58. Plaintiff repeats and realleges the allegations in paragraphs 1 through 57 of the Complaint as though fully set forth herein.

59. This is an action for trademark cyberpiracy under 15 U.S.C. § 1125(d).

60. The domain names <laserresearch.net>, <laserresearchoptics.com>, <laserresearchoptics.net>, <laseropticsresearch.com> and <researchlaseroptics.com> are virtually identical or confusingly similar to Plaintiff's LASER RESEARCH OPTICS mark.

61. Plaintiff has never authorized, licensed, or otherwise permitted Defendant to use the LASER RESEARCH OPTICS mark or any confusingly similar variations thereof.

62. Defendant has no trademark or other intellectual property rights in the <laserresearch.net>, <laserresearchoptics.com>, <laserresearchoptics.net>, <laseropticsresearch.com> and <researchlaseroptics.com> domain names.

63. Upon information and belief, the <laserresearch.net>, <laserresearchoptics.com>, <laserresearchoptics.net>, <laseropticsresearch.com> and <researchlaseroptics.com> domain names do not comprise the legal name of Defendant or a name that is otherwise commonly used to identify Defendant.

64. Upon information and belief, Defendant has made no attempt to use the <laserresearch.net>, <laserresearchoptics.com>, <laserresearchoptics.net>, <laseropticsresearch.com> and <researchlaseroptics.com> domain names in any bona fide offering of goods or services.

65. Upon information and belief, Defendant has not made any bona fide noncommercial or fair use of the LASER RESEARCH OPTICS mark on its web site.

66. Upon information and belief, Defendant has registered Plaintiff's service mark as a domain name and uses such domain name to harm the good will of Plaintiff's

marks and business and to interfere with Plaintiff's business and divert Plaintiff's current and prospective customers to Defendant Sunderland's competing website.

67. Upon information and belief, the unlawful acts complained of herein were committed by Defendant with a bad faith intent to profit from Plaintiff's mark.

68. As a result of Defendant's unlawful acts, Plaintiff has suffered, and continues to suffer, substantial damage and irreparable injury, which damage and injury cannot be accurately computed at this time.

69. Defendant's aforesaid acts constitute trademark cyberpiracy in violation of 15 U.S.C. § 1125(d).

**COUNT II – AGAINST SUNDERLAND & ASSOCIATES**
**(False Designation and Representation of Origin and Unfair Competition)**

70. Plaintiff repeats and realleges the allegations in paragraphs 1 through 69 of the Complaint as though fully set forth herein.

71. This is an action for false designation of origin and unfair competition under 15 U.S.C. § 1125(a).

72. Defendant Sunderland & Associates' use of the <laserresearch.net> domain name to redirect Plaintiff's current and prospective customers to its competing website located at <designoptics.com>, constitutes a false designation of origin and/or a false description or representation which is likely to deceive consumers and prospective and current customers into believing that Defendants' <designoptics.com> web site originates from, is licensed by, sponsored by, or is in some way affiliated with Plaintiff.

73. As a result of Defendant's use of Plaintiff's <laserresearch.net> domain name to instantaneously redirect Plaintiff's current and prospective customers to the

website for Defendant Sunderland's competing business, consumers are likely to be confused and mistake Defendant's website for Plaintiff's. Such use of the <laserresearch.net> domain name by Defendant is likely to cause confusion, or mistake, or to deceive the relevant consuming public as to the affiliation, connection, or association of Defendant with Plaintiff and/or as to the origin, sponsorship, or approval by Plaintiff of Defendant's activities in connection with Defendant's use of the <laserresearch.net> domain name.

74. Upon information and belief, the foregoing acts of false designation of origin and unfair competition have caused, and unless restrained and enjoined by this Court, will continue to cause, serious and irreparable injury and damage to Plaintiff.

## COUNT III – AGAINST BRUCE SUNDERLAND
**(Breach Of The Implied Covenant Of Good Faith And Fair Dealing Of 1995 Employment Agreement)**

75. Plaintiff repeats and incorporates by reference the above-allegations as if each were separately and specifically set forth herein.

76. The Employment Agreement between Meller and Bruce Sunderland contains an implied covenant of good faith and fair dealing.

77. Bruce Sunderland has breached the implied covenant of good faith and fair dealing contained within the 1995 Employment Agreement by causing his companies Nippon and Sunderland & Associates to unlawfully obtain title to and control over Plaintiff's <laserresearch.net> domain name in 1999.

78. As a direct and proximate result of Sunderland's breach of its duty of good faith and fair dealing to Meller, Meller has been damaged.

79. Sunderland's breach of the implied covenant of good faith and fair dealing has caused and will cause Meller to suffer irreparable harm in the form of, *inter alia*, loss of good will.

80. Plaintiff will continue to suffer irreparable harm if Sunderland's activities are not enjoined.

**COUNT IV – AGAINST NIPPON AMERICA LTD.**
**(Breach Of The 1995 Purchase and Sales Agreement)**

81. Plaintiff repeats and incorporates by reference the above allegations as if each were separately and specifically set forth herein.

82. Under the terms of the Purchase and Sales Agreement, Nippon was to transfer to Meller all the exclusive rights to the trademark and trade names LASER RESEARCH OPTICS and to execute such documents as Meller may reasonably require to transfer ownership of such trademark and tradename to Meller.

83. By registering five domain names that are confusingly similar the LASER RESEARCH OPTICS trademark and trade name and by refusing to transfer such domain names to Plaintiff upon request, Nippon has breached the Purchase and Sales Agreement.

84. As a direct result of said breach, Meller has been damaged.

85. By virtue of the breach of this Agreement by Nippon, Nippon is liable to Meller for the damages Meller suffered as a result thereof, plus costs and attorney's fees.

**COUNT V – AGAINST NIPPON AMERICA**
**(Breach Of The Implied Covenant Of Good Faith**
**And Fair Dealing Of The 2000 Sales Representative Agreement)**

86. Plaintiff repeats and incorporates by reference the above-allegations as if

each were separately and specifically set forth herein.

87. The Sales Representative Agreement between Meller and Nippon contains an implied covenant of good faith and fair dealing.

88. Nippon, through its officer Bruce Sunderland has breached the implied covenant of good faith and fair dealing contained within the Sales Representative Agreement by (1) registering five domain names which are confusingly similar to Plaintiff's LASER RESEARCH OPTICS trademark which Plaintiff acquired from Nippon in 1995 and refusing to transfer such domain names to Plaintiff upon request; (2) taking down Plaintiff's website in retaliation for termination of the Sales Representative Agreement; (3) using the <laserresearch.net> domain name to direct Plaintiff's current and prospective customers to Defendant Sunderland's new competing website; and (4) failing to return and using Plaintiff's trade secrets and other confidential information in connection with a competing business.

89. As a direct and proximate result of Nippon's breach of its duty of good faith and fair dealing to Plaintiff, Plaintiff has been damaged.

90. Nippon's breach of the implied covenant of good faith and fair dealing has caused and will cause Meller to suffer irreparable harm in the form of, *inter alia*, loss of good will.

91. Plaintiff will continue to suffer irreparable harm if Nippon's activities are not enjoined.

**COUNT VI – AGAINST NIPPON AMERICA**
**(Breach of the 2000 Sales Representative Agreement)**

92. Plaintiff repeats and incorporates by reference the above allegation as if each were separately and specifically set forth herein.

93. Nippon has breached paragraph 5 of the Sales Representative Agreement by refusing to return to Plaintiff, Plaintiff's trade secrets and other confidential information and using such information in connection with Defendants' competing business Design Research Optics.

94. As a direct result of said breach, Plaintiff has been damaged and continues to suffer damages in its business and has sustained irreparable harm for which there is no adequate and complete remedy at law.

95. By virtue of the breach of this Agreement by Nipon, Nippon is liable to Plaintiff for the damages Plaintiff suffered as a result thereof, plus costs and attorney's fees.

**COUNT VII – AGAINST ALL DEFENDANTS**
**(Conversion of Website Content)**

96. Plaintiff repeats and incorporates by reference the above allegation as if each were separately and specifically set forth herein.

97. By their actions, Defendants converted to their own use property, including the content contained on Plaintiff's LASER RESEARCH OPTICS website formerly residing at <laserresearch.net>, without permission or authority.

98. As a result, Plaintiff has suffered damages.

**COUNT VIII – AGAINST ALL DEFENDANTS**
**(Conversion of <laserresearch.com> Domain Name)**

99. Plaintiff repeats and incorporates by reference the above allegation as if each were separately and specifically set forth herein.

100. By their actions, Defendants converted to their own use property, namely the <laserresearch.net> domain name, without permission or authority.

101. As a result, Plaintiff has suffered damages.

**COUNT IX – AGAINST ALL DEFENDANTS**
**(Misappropriation of Trade Secrets)**

102. Plaintiff repeats and incorporates by reference the above allegation as if each were separately and specifically set forth herein.

103. The Plaintiff's customer lists, customer contact information, customer communications, pricing information, product sales history information and purchaser history information is proprietary trade secret information which is a business asset of Plaintiff and which derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, persons who can obtain economic value from its disclosures.

104. Plaintiff has utilized reasonable efforts to maintain the secrecy of the Plaintiff's confidential information.

105. Defendants have knowingly misappropriated the Plaintiff's confidential information for their own use and benefit.

**COUNT X – AGAINST ALL DEFENDANTS**
**(Violation of the Uniform Trade Secret Act)**

106. Plaintiff repeats and incorporates by reference the above allegation as if each were separately and specifically set forth herein.

107. Defendants have knowingly misappropriated the Plaintiff's confidential and proprietary information in violation of the Rhode Island Uniform Trade Secrets Act, RIGL, § 6-41 et seq.

**WHEREFORE**, Plaintiff demands judgment against Defendants for the following:

1. That Defendants immediately remove the link from the <laserresearch.net> domain name to the website located at the Internet address <designoptics.com>.

2. That Defendants immediately restore Plaintiff's website at the <laserresearch.net> domain name.

3. That Defendants, their agents, servants, employees and attorneys, and all those in active concert or participation with them, be temporarily restrained and preliminary and permanently enjoined from:

(a) using, maintaining, selling, transferring, licensing, or assigning, or offering to sell, transfer, license or assign the domain name <laserresearch.net>, <laserresearchoptics.com>, <laserresearchoptics.net>, <laseropticsresearch.com> and <researchlaseroptics.com> domain names or any colorable variations thereof that give rise to a likelihood of confusion, mistake or deception with respect to Plaintiff's marks, or in any way dilute the distinctiveness of the Plaintiff's marks;

(b) using the Plaintiff's LASER RESEARCH OPTICS mark, or any mark, logo, name or designation that gives rise to a likelihood of confusion, mistake or deception with respect to the Plaintiff's LASER RESEARCH OPTICS mark, or in any way dilutes the distinctiveness of Plaintiff's LASER RESEARCH OPTICS mark as a service mark, domain name, metatag or in any other form;

(c) doing any other acts likely to induce the mistaken belief that Defendants, their products, services, information, or Internet domain name is in any way affiliated, connected, or associated with Plaintiff or its products and/or services.

4. That the Court enter an order requiring the Defendant to immediately notify in writing the relevant domain name registrar(s) of Plaintiff's prior rights in and to the mark LASER RESEARCH OPTICS and request that the <laserresearch.net>, <laserresearchoptics.com>, <laserresearchoptics.net>, <laseropticsresearch.com> and <researchlaseroptics.com> domain names be immediately transferred to Plaintiff.

5. That the Court enter an order requiring the Defendant to immediately transfer to Plaintiff the domain names <laserresearch.net>, <laserresearchoptics.com>, <laserresearchoptics.net>, <laseropticsresearch.com> and <researchlaseroptics.com>.

6. That the Court find that Defendants' acts complained of herein were done willfully and with knowledge of Plaintiff's rights and award Plaintiff compensatory damages, treble damages, costs, and attorneys' fees;

7. That the Court award Plaintiff statutory damages of $100,000 per domain name pursuant to 15 U.S.C. § 1117(d);

8. That Defendants, their agents, servants, employees and attorneys, and all those in active concert or participation with them, be temporarily restrained and preliminary and permanently enjoined from further use and/or disclosure of Plaintiff's confidential business information and trade secrets including Plaintiff's customer lists, customer contact information, customer communications, pricing information, product sales history information and purchaser history information.

9. That the Court enter an order directing Defendants to deliver to Plaintiff all materials embodying Plaintiff's trade secrets and confidential information.

10. That the Court enter an order directing Defendants to disclose to Plaintiff all of Plaintiff's current and former clients that Defendants contacted using Plaintiff's

confidential business information and provide an accounting of all products sold as a result of such contact.

11. That the Court enter a judgment against Defendants for damages pursuant to R.I.G.L. § 6-41-3(a), exemplary damages in the amount of twice Plaintiff's actual damages pursuant to § 6-41-3(b), and reasonable attorneys fees pursuant to R.I.G.L. § 6-41-4; and

12. That the Court award Plaintiff such other relief as this Court deems proper.

MELLER OPTICS, INC. d/b/a LASER
RESEARCH OPTICS

By its attorneys,

William R. Grimm
HINCKLEY, ALLEN & SNYDER LLP
1500 Fleet Center
Providence, RI 02903
Tel. (401) 274-2000
Fax. (401) 277-9600

DATED: July 21, 2005

**VERIFICATION**

I, David Lydon, President of Plaintiff Meller Optics, Inc. d/b/a Laser Research Optics, hereby certifies, under the penalties of perjury: (a) that I have read the foregoing Amended Verified Complaint; and (b) that the allegations contained in the Verified Amended Complaint are true and accurate based upon my personal knowledge, except such allegations as are made upon information and belief, which allegations I believe to be true.