# SALES REPRESENTATIVE AGREEMENT

**THIS AGREEMENT** is made as of the 1st day of October, 2000 by and between MELLER OPTICS, INC., a Rhode Island corporation having its principal place of business at 120 Corliss Street, Providence, Rhode Island 02904, (hereafter called Employer) and NIPPON AMERICAN, LTD., a Vermont corporation with a place of business at 95 Adirondack Drive, East Greenwich, Rhode Island, 02818, (hereafter called Representative.)

## RECITALS

1. Representative has extensive experience in the fabrication, manufacture, sales and distribution of CO2 and related optics and is qualified to sell and manage the sales of such items for the Employer.

2. Employer purchased from Nippon American, Ltd. its division known as Laser Research Optics on October 31, 1995 and has since been engaged in the business of fabrication, manufacture, sales and distribution of CO2 and related optics using the Laser Research Optics name as a d/b/a of Meller Optics, Inc.

3. Employer has extended an offer to the Representative to represent Employer subject to the terms and conditions set forth in this Agreement, and Representative accepts such offer.

In consideration of the foregoing and the mutual covenants set forth in this Agreement, the parties agree as follows:

## AGREEMENT

1. Contract. Employer contracts Representative and Representative accepts the contract of the Employer subject to terms and conditions set forth in this Agreement to sell and manage the sales of all CO2 and related optics and other such optical lines and endeavors as the parties shall agree are appropriate for the Representative to manage on behalf of Employer. The Representative's territory shall include all worldwide markets.

Employer may assign Representative other duties which are consistent with Representative's expertise and the scope of this Agreement, but not without Representative's consent.

2. Term of Employment. This Agreement shall become effective as of October 1, 2000 and remain in effect for a period of Five (5) years, subject to any early termination provisions set forth in this Agreement. Unless otherwise extended, modified, or terminated, this contract shall be extended by the Employer to the Representative on a month-to-month basis after the original term ends.

3. Commission on Sales. The representative shall be entitled to receive commission on sales of CO2 and related products currently being sold by the Laser Research Optics division of Meller Optics, Inc. in accordance with the following stipulations:

A. Representative will receive Twelve (12%) of the sales of the Laser Research Optics division after returns and allowances.

B. Commissions will be paid monthly based on sales in the prior month.

C. Representative and their duly authorized agents shall have all reasonable rights on inspection of Employer's books and records relating to item on which commissions are being paid. Employer shall provide such accountings related thereto as may be reasonably required by the Representative.

D. In the event of unforeseen circumstances that make it impossible for Employer to meet on a timely basis the payment obligations set forth in 3 (a) and (b) above, Employer and Representative will make a good faith effort to avoid a payment default and insure the continued profitable operation of the Laser Research Optics division of Employer.

4. Responsibility For Expenses. The Representative will assume responsibility for the following expenses:

→A. Payroll and associated payroll expense of all employees of Representative.
B. All office, clerical, and computer related expenses associated with the operation of the Representative's home office.
C. All phone and fax charges to the Representative's home office. All pagers and cell phones.
D. All credit card expenses.
E. All travel expense in pursuit of sales or to and from trade shows.
F. All personal trade show expenses, ie. hotels, meals, phones etc.
G. All entertainment expense related to sales.
H. All personal health care and insurance expense.

The employer shall assume responsibility for the following expenses:

→ A. All advertising, marketing and promotional expenses such as press releases, trade journal ads, ad design expense, promotional mailings and letters.

B. All costs related to lead fulfillment, EDA discs and any database management expense generated on site at Meller Optics, Inc.
C. All hard trade show expenses such as registration, booth and costs associated with freighting or maintaining it; phone service (other than personal phones) wired directly to the booth, lead fulfillment services, electrical service to the booth and cleaning expense.
D. All costs associated with order entry and invoicing.
E. All costs associated with product manufacture, inspection, packaging and inventory management.

5. Trade Secrets. Representative agrees, that absent Employer's express consent and except while conducting the Employer's business, he shall not disclose to any person or entity any proprietary information regarding Employer relative to its business, customer, products, prices, other employees or manner of doing business. In the event of a breach of this provision, Employer shall be entitled, without barring any other remedies, to injunctive relief prohibiting Representative from disclosing such information. This provision shall survive any termination of this Agreement. This provision shall not be construed to apply to proprietary trade information relating to the business conducted by Laser Research Optics after Representative is no longer under contract with the Employer.

6. Exclusivity of Service. Representative agrees to devote sufficient time, energy and attention to the performance of his duties under this Agreement as shall be reasonably required to accomplish the same, and not to undertake any activity which materially interferes with his ability to perform said duties or which detracts from Employer's business. Employer acknowledges that Representative owns an inventory of C02 which he may sell. Representative agrees that prior to any sale he shall provide a right of first refusal to Employer to purchase the same.

7. Termination of Employment. This Agreement and the employment relationship between the parties shall terminate upon the occurrence of any of the following events:

A. Employer ceases doing business;
B. Employer ceases the manufacture, distribution, and/or sales of the Laser Research Optic's product line and as a result thereof terminates the Representative's services. In such event Representative shall be entitled to Six (6) months' severance pay computed as an average of the last six months' commissions. The sum shall be paid in six (6) equal monthly installments, commencing immediately.
C. Employer's discharge of Representative for cause, including but not limited to, Representative's failure or refusal to substantially perform the duties outlined in the Agreement, Representative's failure or refusal to adhere to such reasonable rules and policies as shall from time to time be established by

Employer and which do not diminish the rights of the Representative, or increase the Representative's responsibilities or duties, or conduct by Representative which is materially and purposely detrimental to Employer's reputation or business; or

D. The death of Bruce Sunderland, in which event Employer shall pay any sums due Representative to the party or parties designated by the Representative.

8. Breach of Agreement. In the event either party breaches this Agreement and as a consequence of the same litigation between the parties is initiated, in addition to all other relief granted by a court having jurisdiction over the parties and/or subject matter, the prevailing party shall be entitled to collect reasonable attorney's fees and costs.

9. Assignment. Neither party may assign its rights to delegate its or his duties hereunder without the prior written consent of the other party.

10. Waiver. The failure of either party to insist upon performance of any term, condition or covenant contained in this Agreement shall not be construed as a waiver thereof, nor shall such act be deemed a waiver of future performance of any such term, condition, or covenant.

11. Notices. Any notices required to be sent to either of the parties may be delivered to addresses shown in the first Paragraph of this Agreement until and unless either party notifies the other of a change of address.

12. Binding Nature. This Agreement shall be binding upon the successors and assigns of the parties.

13. Integration and Miscellaneous Provision. This instrument represents the complete agreement between the parties and, regardless of the existence of any other agreements between the parties, stands as an independent agreement. No modification or amendment hereto shall be binding unless it is in writing and signed by both parties. Paragraph titles are descriptive only and shall not be deemed a part of the Agreement. This Agreement shall be governed by and interpreted in accordance with the laws of the State of Rhode Island. The invalidity of a portion or portions of this Agreement shall not affect the validity of the remainder of this Agreement. The Agreement may be executed in multiple copies, and each such executed copy shall be considered an original. Each party agrees to execute such further instruments and take such further actions as may be appropriate to accomplish the purposes of this Agreement and which are not inconsistent herewith.

IN WITNESS WHEREOF, the parties have executed this Agreement in multiple copies on the date first above written.

Witness:

Meller Optics, Inc.

By: ______________________
David Lydon, President

Nippon American, Ltd.

By: ______________________
Bruce Sunderland